No. 12136

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

LARRY FRATES,

Defendant and Appellant.

---

Appeal from: District Court of the Thirteenth Judicial District,
Honorable Charles Luedke, Judge presiding.

Counsel of Record:

For Appellant:

Towe, Neely and Ball, Billings, Montana.
Gerald J. Neely argued, Billings, Montana.

For Respondent:

Honorable Robert L. Woodahl, Attorney General,
Helena, Montana.
J. C. Weingartner, Assistant Attorney General, argued,
Helena, Montana.
Harold F. Hanser, County Attorney, argued, Billings,
Montana.

---

Submitted: May 16, 1972

Decided: NOV 1 5 1972

Filed: NOV 1 5 1972

*Thomas J. Kearney*
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Defendant, Larry Frates, appeals from a judgment of conviction of the crime of criminal sale of dangerous drugs entered on June 10, 1971, following jury trial and verdict of guilty in the district court of the thirteenth judicial district, county of Yellowstone, the Hon. Charles Luedke, district judge presiding. Following denial of his motion for a new trial, defendant appeals from the judgment of conviction.

Defendant was arrested on the night of March 17, 1971, in Room 105 of the Imperial 400 Motel in Billings by officers of the Billings police department following a sale by defendant of 900 LSD tablets to an undercover police officer, Richard Stelzer. Two officers of the Billings police department, Sgt. Jack Samson and Detective Pat Hagel, occupied the adjoining motel room and heard the entire conversation between defendant and Officer Stelzer by means of an electronic "bug" planted in the telephone in Room 105, which transmitted the conversation through the telephone in the room they occupied.

At trial, defendant admitted his actions of March 17, 1971, but offered testimony and evidence to support his defense of entrapment by the Billings police and the Yellowstone County sheriff's departments.

During trial it developed that a police informer, Dale Anderson, a bartender at the Midway Bar in Billings, had purchased 100 LSD tablets from defendant on two separate occasions within days of the crime charged, and played a significant role in arranging the meeting at the Imperial 400 Motel between Officer Stelzer and defendant culminating in the sale of 900 LSD tablets with which defendant was charged.

Defendant was duly charged with the latter sale, tried by jury, convicted, and sentenced to twenty years in the state

prison. Following denial of his motion for a new trial, defendant appeals from his conviction.

Defendant raises seven issues on appeal:

1. The court erred in refusing to give defendant's offered instruction No. 7.

2. The court abused its discretion in admitting evidence where there was an incomplete chain of possession.

3. The court abused its discretion in allowing informant to testify to alleged prior sales.

4. Entrapment having been shown as a matter of law, the court erred in not granting a directed verdict of acquittal at the close of the prosecution's case.

5. The court erred in not striking all testimony relating to conversations taking place in the motel room in question.

6. The court erred in not granting a new trial or directing a verdict of acquittal at the close of defendant's case.

7. The court erred in overruling defendant's objection to plaintiff's offered instruction No. 4.

Directing our attention to Issue 1, we observe that defendant's offered instruction No. 7 is covered by the court's instruction No. 2, which is the cautionary instruction taken verbatim from Instruction No. 1, M.J.I.G. Accordingly there is no error in the court's refusal of defendant's offered instruction No. 7 covering the same point in slightly different language. State v. Lagge, 143 Mont. 289, 388 P.2d 792; State v. Logan, 156 Mont. 48, 473 P.2d 833.

In Issue No. 2, defendant argues the district court abused its discretion in admitting evidence of dangerous drugs where there was an incomplete chain of possession. The evidence establishes a chain of possession of the LSD tablets from defendant to the arresting officers; from there to tagging, marking and storing in the evidence vault at the Billings police department; the packaging and addressing of four of the tablets to the Bureau of Narcotics and Dangerous Drugs in San Francisco;

- 3 -

the receipt of the four pills by this agency; their examination, testing, and identification by chemist Chan of that agency; and, the return of the plastic container, the mailing box, and the mailing wrapper,bearing the handwriting of one of the Billings officers, to the Billings police department. Under such circumstances, the absence of the direct testimony of the person who actually mailed them to San Francisco is immaterial and in no sense breaks the chain of possession, precluding their admissibility in evidence.

Issue No. 3 concerns the admission of testimony by informant Anderson of alleged prior sales of dangerous drugs by defendant.

The state's evidence disclosed that Dale Anderson was requested by the Billings police department to assist it in curbing the drug traffic in Billings and to relay information on drug traffic as a paid informer. Anderson was given the names of two suspects of particular interest to the Billings police department, one of whom was Ron Novasio and the second, the defendant.

In late February or early March 1971, defendant came to the Midway Bar in Billings where Anderson was employed as a bartender. Anderson told defendant that he wanted to go into a "partnership" with defendant in the illegal drug field. Anderson informed defendant he was not getting supplied like he should, and asked if defendant could assist him. Defendant replied that he was not sure at that time, but he would let Anderson know. Again, about a week later, defendant and Anderson came into contact and discussed their possible agreement.

On March 9, 1971, approximately a week and a half after their last meeting, defendant came to the Midway Bar and handed Anderson a sack containing 100 capsules of LSD. Defendant told Anderson the capsules were LSD, which could be sold for double the amount of money needed to purchase them. Anderson turned the capsules over to Detective Hagel, who gave Anderson $150 so that he could pay defendant. About a week later, on March 14,

1971, defendant returned to the Midway Bar and handed Anderson another sack containing 100 LSD capsules which were again turned over to Detective Hagel. It is the evidence of these prior transactions admitted at the trial over the objection of defendant, that is one of the principal assignments of error.

The general rule in regard to the admissibility of evidence of other crimes is stated in 29 Am.Jur.2d, Evidence, §320,p.366:

"It is a well-established common-law rule that in a criminal prosecution proof which shows or tends to show that the accused is guilty of the commission of other crimes and offenses at other times, even though they are of the same nature as the one charged, is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged * * *."

Montana's adherence to the above quoted general rule is recited in State v. Jensen, 153 Mont. 233, 238, 455 P.2d 631, which states:

"* * * Montana recognizes the general rule '"that when a defendant is put upon trial for one offense, he should be convicted, if at all, by evidence which shows that he is guilty of that offense alone; and evidence which in any manner shows, or tends to show, that he has committed another crime wholly independent, even though it be a crime of the same sort, is irrelevant and inadmissible." Williams v. State, 68 Okl.Cr. 348, 352, 98 P.2d 937, 939.' State v. Tiedemann, 139 Mont. 237, 362 P.2d 529 (1961). The reason for this rule is---the defendant is entitled to be informed of the crime charged so as to prepare his defense and proof of other crimes subjects him to surprise and defense of multiple collateral or unrelated issues. State v. Nicks, 134 Mont. 341, 332 P.2d 904, (1958)." (Emphasis added)

Jensen, then goes on to state a recognized exception to this general rule:

"There are recognized exceptions to this general rule: similar acts with the same prosecuting witness, State vs. Sauter, 125 Mont. 109, 232 P.2d 731 (1951); similar acts not too remote in time, State vs. Nicks, supra; and 'where the evidence of other crimes tends to establish a common scheme, plan or system and where such other crimes are similar to, closely connected with and not too remote from the one charged, and also where they are so that proof of one tends to establish the other.' State v. Merritt, 138 Mont. 546, 357 P.2d 683 (1960); State v. Gransberry, 140 Mont. 70, 367 P.2d 766 (1962)." (Emphasis added)

The weight of authority, although not pursued in Jensen, is favorable to this exception to the general rule. State v. McDaniel, 80 Ariz. 381, 298 P.2d 798; Warren v. State, 95 Ga.App.

79, 97 S.E.2d 194; State v. Whiting, 173 Kan. 711, 252 P.2d 884; Commonwealth v. Kline , 361 Pa. 434, 65 A.2d 348.

We recognize that the admission of such evidence is an exception to the general rule and accordingly we are obligated to look very carefully at the relative probative value of such evidence, if any, and weigh it against the prejudice inherent in this type of evidence in the light of the actual need to introduce such evidence by the state.

The evidence of the two prior sales of LSD to the informer in the instant case is part of the corpus delicti of the crime with which the defendant is charged. It is a part of the totality of events and occurrences leading to and culminating in the sale of the 900 LSD tablets to the undercover police officer of which defendant was convicted. It tends to explain the circumstances leading to the commission of the crime charged, establishes defendant's intent to commit the crime charged, and negatives the defense of entrapment. As such, it is clearly relevant, probative and competent evidence tending to prove the crime charged. The fact that it is inherently prejudicial to defendant does not detract from its admissibility under such circumstances, particularly where, as here, no element of surprise is involved.

Defendant argues that such evidence is not admissible in the state's case-in-chief as the defense of entrapment had not been raised by defendant at this juncture. The record belies this claim. Defendant had made his opening statement immediately following that of the state before the introduction of any evidence and although such opening statement is not transcribed in the record on appeal, the record indicates the defense of entrapment had been raised therein by the following remark of the trial judge in response to defendant's objection to the admissibility of evidence of the two prior sales of LSD:

> "THE COURT: Well, it seems to me that the die
> is pretty well cast by virtue of the opening
> statements made on both sides, to which neither

made any objection. And the rule in Montana is that provided by State v. Jensen, 153 Mont. 233, and under the circumstances I'm going to over-rule the objection."

Issue No. 4 is whether entrapment was established as a matter of law entitling defendant to a directed verdict of acquittal. The law of entrapment is set forth in our recent decision in State v. Karathanos, _____Mont._____, 493 P.2d 326, 330, 29 St.Rep. 81, 88, which we quote in pertinent part:

> "Defendant now contends that he was entrapped into committing the offense charged. With this contention, we cannot agree. Entrapment occurs only when the criminal intent or design originates in the mind of the police officer or informer and not with the accused, and the accused is lured or induced into committing a crime he had no intention of committing. Only when the criminal design originates, not with the accused, but in the mind of government officers and the accused is by persuasion, deceitful representations, or inducement, lured into the commission of a criminal act, can a case of entrapment be made out. In short, there is a controlling distinction between inducing a person to do an unlawful act and setting a trap to catch him in the execution of a criminal design of his own conception. The fact that the Yellowstone County sheriff's office afforded the opportunity or facility for the commission of the offense, does not come within the entrapment rule. In this class of offenses, usually committed secretly, it is difficult if not almost impossible to secure the evidence necessary to convict by any other means than by the use of decoys. Certainly, there can be no objection to their use if the officers do not by persuasion, deceitful representations or inducement, lure a person who otherwise would not be likely to break the law, into a criminal act. State v. Wong Hip Chung, 74 Mont. 523, 241 P. 620; State v. Parr, 129 Mont. 175, 283 P.2d 1086; 22 C.J.S. Criminal Law §§ 45(1), 45(2), 45(4), p. 137."

Here, the evidence is conflicting precluding entrapment as a matter of law, and the jury resolved this conflict against the defendant.

There is no merit in defendant's issue No. 5. It is based on the failure of the state to permit inspection and copying of the tape recording of the conversation between defendant and the undercover police officer in the motel room at the time of sale. The uncontradicted evidence shows that the tape was unintelligible, inaudible, not available, and not used prior to or at the trial. Under such circumstances the claimed error is without substance.

Defendant's issue No. 6 is encompassed in the other errors claimed and need not be separately discussed.

In issue No. 7, the final issue, defendant claims that the word "suspect" as used in court's instruction No. 11 was error. Instruction No. 11 reads in pertinent part:

> "On the other hand, where a person already has the readiness and willingness to break the law, the mere fact that law enforcement officers or their agents provide what appears to be a favorable opportunity is not entrapment. For example, when law enforcement officers or their agents suspect that a person is engaged in the illicit sale of dangerous drugs, it is not entrapment for law enforcement officers or their agents to pretend to be someone else and to offer, either directly or through an informer or other decoy, to purchase narcotics from such suspected person." (Emphasis supplied)

Defendant contends the term "suspect" was error and the words "has reasonable grounds for believing" should have been substituted. The use of the word "suspect" is entirely proper where, as here, the balance of the instruction clearly indicates that the impetus for commission of the crime must emanate from defendant and that the law enforcement officers can do no more than create the opportunity for its commission by posing as prospective purchasers of contraband.

The judgment of the district court is affirmed.

_____
Associate Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Associate Justices.