No. 12430

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

---

THE STATE OF MONTANA,

                Plaintiff and Respondent,

-vs-

HAROLD (SONNY) HOSKINS,

                Defendant and Appellant.

---

Appeal from:  District Court of the Second Judicial District,
              Honorable James D. Freebourn, Judge presiding.

Counsel of Record:

    For Appellant:

        John G. Winston argued, Butte, Montana

    For Respondent:

        Hon. Robert L. Woodahl, Attorney General, Helena,
        Montana
        J. C. Weingartner appeared, Assistant Attorney General,
        Helena, Montana
        Lawrence Stimatz, County Attorney, Butte, Montana
        Brian Tierney, Deputy County Attorney, argued, Butte,
        Montana

---

                    Submitted:  September 28, 1973

                    Decided: OCT 15 1973

Filed: OCT 15 1973

*Thomas J. Kearney*
                          Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant was convicted of the criminal sale of a dangerous drug by jury verdict in the district court of Silver Bow County before the Hon. James D. Freebourn, district judge. Judgment was entered thereon and defendant was sentenced to a term of ten years in the state prison. Following denial of his motion for a new trial, defendant appealed from the judgment of conviction.

The underlying issue upon appeal is the legal sufficiency of the identification of defendant to support the conviction.

Defendant Harold Douglas (Sonny) Hoskins was charged by information filed in the district court with the criminal sale of a dangerous drug on January 21, 1972, at about 9:30 p.m. at the Terminal Bar in Butte, Montana. The basis of the charge was an alleged sale of one gram of hashish for $6.00 to Robert E. Lee, a deputized undercover narcotics agent of the Silver Bow County sheriff's office. Following defendant's plea of "not guilty", the matter came on for jury trial on September 20, 1972.

The principal witness for the state was Robert E. Lee, the undercover narcotics agent. He testified to the sale and identified defendant as the seller. His testimony indicated that he had not previously known defendant, did not find out his name until later, and had not seen defendant thereafter until the morning of the trial when he saw him alone in the lobby of the courthouse and identified him. He testified that at the time of sale defendant was wearing an olive drab army field jacket, a plaid shirt of some kind, a cast or brace of some kind on his arm, and that defendant was wearing square-type glasses and had one or two day's growth of beard.

Lee testified that on the evening following the sale he

went to the home of Mark Jordan, a detective with the Silver Bow County sheriff's office, where he was shown several mug shots and identified defendant as the person who had sold the hashish to him. The mug shot had been taken some two years previously when defendant was substantially heavier and differed somewhat in physical appearance.

Lee's testimony concerning defendant's identification by means of the mug shots was corroborated by Jack Walsh, a detective with the Silver Bow County sheriff's office, who was present at Jordan's house at the time of identification. Lee's testimony concerning identification of the defendant in the lobby of the courthouse was corroborated by Mark Jordan.

Defendant testified in substance that although he was present in the Terminal Bar at the time of the alleged sale, he did not make a sale to Lee or anyone else. He testified that he was not wearing an army type field jacket, that he did not have a cast or brace or anything resembling it on his arm, and that he was not wearing a plaid shirt.

Defendant's testimony was corroborated by two friends, Joe Swan and Larry McAllister, who were with him in the Terminal Bar at the time of the alleged sale. Defendant's sister, Shirley Dawson, testified that defendant lived in her home, didn't own a plaid shirt, had no cast or brace on his arm, and had not worn an army type field jacket out of the house since his return from the military service some 2-1/2 or 3 years previously. This latter testimony covering the army type field jacket was disputed by Jack Walsh who had known the defendant since high school days; he testified he had seen him two or three times within a month prior to his arrest wearing a regular army fatigue jacket.

Dr. John Davidson, an orthopedic surgeon from Butte, was called as a witness for defendant and testified that on the day

of the alleged sale and on occasions immediately previous and subsequent thereto, he had been treating the defendant for a lower back injury and that defendant showed no evidence of injury to either arm and was not wearing a cast or similar device when he saw him. Dr. Davidson's testimony was corroborated by Josephine Antonich, a physical therapist employed by Dr. Davidson.

Other testimony presented by defendant tended to indicate that it would have been difficult, if not impossible, for defendant to have been playing a game of "foosball" in the Bar at the time of the alleged sale with a cast on his arm because of the physical dexterity required; that an Indian by the name of "Sonny", the only name by which Lee knew the defendant at the time of the alleged sale, was in the bar at the same time; and that shortly before defendant's arrest, Mark Jordan and another sheriff's deputy mistook a third person for the defendant.

The thrust of defendant's contention is that the testimony at the trial did not establish identification of defendant beyond a reasonable doubt and to a moral certainty, and because this standard of proof was not satisfied, the identification of the defendant was inconclusive and the case should not have gone to the jury.

In analyzing the evidence in this case, we note the ultimate issue is whether defendant was the person who made the sale of one gram of hashish to Lee, the undercover narcotics agent. What clothing the defendant was wearing at that time, whether he had a cast or brace on his arm, any change in his physical appearance from the time of the mug shot, and his physical resemblance to other individuals are simply factors bearing on the ultimate issue of identity. The undisputed

- 4 -

testimony shows his presence in the bar at the time of sale. There is no evidence that anyone in the bar at the time of sale bore any physical resemblance to him. Defendant admitted someone in the bar that night solicited him for a sale of hashish, but denies it was Lee or that he ever saw Lee there. Lee's testimony furnishes a positive identification of defendant as the man that made the sale of hashish to him: first, by personal confrontation at the time of sale; secondly, by the mug shot; third, in the lobby of the courthouse; and finally in the courtroom at the time of trial. Lee's identification of defendant by the mug shot the day following the sale was corroborated by Jack Walsh, a detective from the sheriff's office. Lee's identification of defendant in the lobby of the courthouse was corroborated by Mark Jordan, another detective from the sheriff's office.

The conflicts in the evidence concerning defendant's clothing and the cast amount to no more than conflicts in the evidence to be resolved by the jury. State v. Steward, 151 Mont. 551, 445 P.2d 741. The credibility of the witnesses and the weight to be given their testimony are matters for the jury to resolve. State v. Lagge, 143 Mont. 289, 388 P.2d 792; State v. Warrick, 152 Mont. 94, 446 P.2d 916. The jury could well have believed that Lee was mistaken about the .cast or brace or even about some of defendant's clothing, and still believed his identification of defendant by the mug shot and in person. There is nothing in the physical facts here that requires a different result.

The jury found the evidence they believed to establish the identity of the defendant beyond a reasonable doubt. The trial judge, who observed the witnesses and heard their testimony in person, affirmed the jury verdict by his denial of defendant's motion for a new trial. We find substantial evidence to support

- 5 -

the finding of the jury.  Accordingly, we will not disturb the jury verdict on appeal.  State v. Bouldin, 153 Mont. 276, 456 P.2d 830.

The judgment of the district court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

_____
Hon. R. D. McPhillips, district
judge, sitting in place of Mr.
Justice John Conway Harrison.